**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**RICHARD T. DEES,**

**Plaintiff,**

**vs.**                                        **CASE NO. 1:05CV44-MMP/AK**

**JO ANNE B. BARNHART,
Commissioner of Social Security**

**Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### A.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on April 8, 2002, and February 19, 2002, respectively, alleging a disability onset date of February 11, 2001, because of leg pain, ears ringing, confusion, and lack of concentration.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on April 21, 2004,

and entered an unfavorable decision on June 21, 2004.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

**B.**   **FINDINGS OF THE ALJ**

The ALJ found that objective testing, including x-ray, MRI and ECG revealed only a small disc protrusion, which was not impinging on the nerve root and could not account for the pain Plaintiff claimed to be experiencing in his lower back and radiating into his legs.  (R. 16).  Neither Dr. Cohen nor Dr. Boylan could find objective support for the subjective complaints.  (R. 16).  Nerve conduction studies were normal, he exhibited no muscle weakness, no motor or sensory abnormalities, and no pathological reflexes. (R. 17).  Plaintiff was treated for ear ache and abdominal pain, but an abdominal sonogram was normal.  (R. 17).  Plaintiff reported to Dr. Cheshire, a neurologist, that a co-worker had been exposed to hydrogen sulfide gas and experienced similar symptoms, but he could recall no personal incident of exposure.  Dr. Cheshire's research on the issue revealed no incidence of exposure that was not accompanied by a loss of consciousness.  (R. 18).  Dr. Cheshire could not explain any reason for Plaintiff's symptoms.  (R. 18).  Plaintiff underwent a consultative examination by a psychiatrist, Dr. Mhatre, and reported that he had never had prior mental health treatment.  (R. 18).   Dr. Mhatre found only mildly impaired functioning secondary to his physical problems.  Dr. Kaye Kilburn, a specialist in environmental medicine, examined Plaintiff for chemical exposure and diagnosed "chemical encephalopathy."  (R. 19). Plaintiff reported to her three different exposures to hydrogen gas.  (R. 18-19).

**No. 1:05CV44-MMP/AK**

The ALJ found that Plaintiff suffered from leg pain, chemical sensitivity and headaches, which were severe within the meaning of the Regulations, but that did not meet the listings for impairments.  Plaintiff's mental impairment, affective disorder, was not severe.  (R. 19).

The ALJ found Plaintiff's allegations of pain and limitation to be less than credible.  Only Dr. Kilburn found any cause for Plaintiff's leg problems, which she assessed as peripheral neuropathy, but no objective neurological tests found any neurological deficit.  Her diagnosis was based on Plaintiff's subjective complaints, and for some reason Plaintiff had failed to describe to his other treating physicians any incidents of exposure to hydrogen gas, much less treatment for it, but he told Kilburn of three such incidents.  Nonetheless, the ALJ found that Plaintiff's leg pain was severe, even if no etiology had been established for it.  Also, Plaintiff should not be exposed to dust, fumes or gas, and should not be required to use ladders, heavy machinery, and should be allowed to have a sit/stand option every thirty minutes.  (R. 23).  Because of his anxiety and depression he should not be exposed to high levels of stress.  (R. 23).  Thus, since his past relevant work was heavy, the ALJ found that he cannot perform his past relevant work and is limited to light work.  The vocational expert called to testify at the hearing found him capable of doing several jobs such as ticket printer, labeler, cloth examiner, surveillance system monitor, photo mounter, and a buckler and lacer.  Thus, there were substantial numbers of jobs in the national economy that Plaintiff could perform.

**No. 1:05CV44-MMP/AK**

C.    <u>ISSUES PRESENTED</u>

Plaintiff argues that the ALJ failed to consider both his physical and psychiatric impairments, specifically the findings of Dr. Marc Cohen.

The government responds that the ALJ not only considered Plaintiff's mental condition, but he found it to be not severe because the evidence supported no limitation in daily activities, social functioning, and no episodes of deterioration or decompensation in a work setting.  He also found that the condition caused only mild difficulties in maintaining concentration, persistence, and pace.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

D.    <u>STANDARD OF REVIEW</u>

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  <u>Bloodsworth v. Heckler</u>, 703

**No. 1:05CV44-MMP/AK**

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

**No. 1:05CV44-MMP/AK**

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**No. 1:05CV44-MMP/AK**

E.      **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

X-rays taken on February 11, 2001, show nothing wrong with his abdomen and a normal lumbar spine.  (R. 149-150).  An MRI revealed a small, central disc herniation L5-S1, which barely contacted the roots and did not compress the thecal sac.  (R. 174).

Dr. Corpuz' treated Plaintiff in 2002 for abdominal pain, which x-ray revealed was normal except for constipation.  (R. 157-160).  An extensive evaluation was done on his lower back, including a muscle biopsy on his calf, but nothing was indicated.  (R. 171).

Dr. Marc Cohen's records span a treatment history from April 2001 through March 2003.  (R. 206-307).  In a report dated March 10, 2003, he reported that he had consulted with Dr. Cheshire, a neurologist, but "this entire evaluation has been negative."  (R. 207).  Dr. Cohen believed that "he has significant symptoms, and although we have not been able to correlate abnormalities on physical examination, laboratory evaluation and radiologic evaluations, I continue to support his effort to seek disability."  (R. 207-208).  Plaintiff was to continue treating the symptoms with analgesics and pain medication.  Plaintiff told Dr. Cohen about someone else at the pulp mill being exposed to hydrogen sulfite gas, but when asked specifically if he had any personal exposure to the gas, he said he had not.  (R. 206).  Later examinations by Dr. Cohen were virtually unchanged.  (R. 213-215).

Counsel for the Plaintiff submitted a letter *after* the hearing and to the Appeals Council addressed "To Whom It May Concern" from Dr. Cohen dated October 27, 2004, which for the first time references Dr. Cohen's knowledge of prior exposures to

No. 1:05CV44-MMP/AK

hydrogen sulfide at work, after which he suffered a "diffuse pain syndrome and a probable peripheral neuropathy." (R. 368). He blames "the limits of our testing" for the fact that no testing could correlate his abnormalities and stated that he had no suspicion that Plaintiff was drug seeking or abusing his medication. (R. 368).

Plaintiff described to Dr. Cheshire on December 16, 2002, that the leg pain started after a 21 day work shift with no unusual preceding activities or physical labor, but while he was resting at home. (R. 216). He told Dr. Cheshire that someone else at the pulp mill had suffered from exposure to hydrogen sulfate gas and was unconcsious for several months, but he had no such encounter and no episodes of unconsciousness and no pulmonary symptoms occurring at the same time as his leg pains. (R. 216-217). All of the tests have been normal and his work up was "extensive." (R. 217). Dr. Cheshire's conclusion was leg discomfort with no known cause. He researched the issue of hydrogen sulfate, but found no cases where there an incident of exposure without loss of consciousness. (R.218). Nerve conduction studies on the legs were normal. (R. 223, 275). MRI of the lumbar spine revealed a small herniation causing minimal stenosis. (R. 227). Muscle biopsy revealed no abnormality. (R. 240, 265-267). Additional consultation was had with Dr. Boylan, who also found no evidence for any neurological deficits. (R. 245, 249, 256).

Dr. Kaye Kilburn's report is dated September 30, 2003, and he examined him for exposure to hydrogen sulfide. (R. 309). He refers to Plaintiff's first exposure in 1997 for which he went to the doctor, who allegedly told him to take 10 days off work and rest,

No. 1:05CV44-MMP/AK

and that he would send oxygen to his home.  His employer allegedly sent him for a second opinion, which corroborated the first diagnoses, but did not recommend oxygen for treatment.  (R. 309).  Plaintiff was re-exposed in 2000 and then a leaking pipe was discovered on March 11, 2001, and he was laid off when he became ill following this incident.  (R. 309).  A number of abnormalities were noted such as "absent gag reflex, unsteady gait, abnormal past pointing and rapid alternating movements, and fine tremors" and Dr. Kilburn attributed these symptoms to Plaintiff's chemical exposure to hydrogen sulfide.  (R. 314).  Dr. Kilburn also found his pulmonary function studies to be abnormal for small airways disease

Dr. Mhatre examined Plaintiff on December 26, 2002.  Plaintiff reported pesticide exposure as a possible explanation for his leg pain.  (R. 188).  He described his average day as hanging out with his brother "where they do a lot of machine work and works on automobiles."  (R. 189).  "He then goes outside and rides around in his golf cart on the family farm which is 120 acres."  (R. 189).  Dr. Mhatre found him to have good concentration and comprehension, his memory was intact, and his depression appeared secondary to his not being able to work.  (R. 189).

A Psychiatric Review Form completed by Dr. Peterson, psychologist, dated January 8, 2003, found Plaintiff to have an affective disorder, not severe, and causing none to mild limitations in daily functioning levels.  (R. 192-205).

A Residual Functional Capacity Assessment dated August 30, 2002, and completed without treating source records found him virtually unlimited.  (R. 179-186).

**No. 1:05CV44-MMP/AK**

**F.     SUMMARY OF THE ADMINISTRATIVE HEARING HELD APRIL 21, 2004**

Plaintiff was 41 years old at the time of the hearing, he graduated high school, and was a certified welder.  (R. 373-374).  He last worked in July 2001, but can no longer work because he "can't stand on his feet to get around to work."  (R. 375).  He takes a number of medications, including Oxycontin, Percocet, Neurontin, Flexeril, Klonopin, Prevacid, and Imitrex.  (R. 376).  The medications make him sluggish, tired and sleepy.  (R. 377).  When he feels housebound he rides around on a golf cart.  (R. 385).  He also picks up tree limbs in the yard, cuts a half acre lawn on the riding mower, and helps out with some household chores.  (R. 385-386).

The vocational expert testified that Plaintiff's past work was medium to heavy. (R. 394-395).  The expert was asked to assume a 41 year old individual with a high school education, able to perform light work, but limited by the inability to climb ladders, and unprotected heights, no heavy machinery, no fumes, dust or gases, no complex tasks with a sit/stand option.  (R. 395-396).  The expert identified a number of jobs Plaintiff could still perform.  (R. 396-398).

**G.     DISCUSSION**

Plaintiff contends that the medical records and opinion of Dr. Marc Cohen supports a finding that Plaintiff's mental condition is severe and that if the ALJ considered this in conjunction with Plaintiff's other physical limitations, he would find Plaintiff disabled.  The undersigned has reviewed carefully the ALJ's decision and the

**No. 1:05CV44-MMP/AK**

medical evidence of record and finds that the ALJ considered each of Plaintiff's allegations, including his mental condition.  It is significant to note that Dr. Cohen is a rheumatologist.  The ALJ based much of his findings as to Plaintiff's mental condition on the examination of Dr. Mhatre, a psychiatrist, who found Plaintiff to be only mildly impaired.  This comports with Plaintiff's own report that he had never sought mental health treatment.  See Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (absence of treatment indicates that a mental impairment is not severe).  Also, in accord was the RFC prepared by a psychologist, who found his condition to be not severe and only mildly affecting his abilities to function.

There is also substantial support for the ALJ's findings that Plaintiff's leg pain is not disabling.  There are numerous objective tests that show only mild or minimal problems in his lower back and no neurological explanation for the severe pain he claims to have in his legs.  Further, the only explanation offered by Plaintiff and one treating physician, chemical exposure, was significantly discredited by the ALJ because of Plaintiff's own conflicting reports to Drs. Cheshire, Cohen and Kilburn.  As the ALJ noted, Plaintiff was treated for 18 months without mention of his personal exposure to a chemical agent.  When asked by Dr. Cheshire he denied any such incident and referred to someone else at work who had been exposed.  It is curious that he would not recall three separate incidents for which he received medical treatment until his examination by Dr. Kilburn, especially when his doctors were at such a loss to explain his severe symptomology.  It is also significant that there is no medical evidence of any treatment

**No. 1:05CV44-MMP/AK**

for these exposures.  Thus, the ALJ had substantial support for not finding his subjective complaints credible or Dr. Kilburn's findings, which were primarily based on these subjective reports.  Nonetheless, the ALJ acknowledged some degree of limitation with Plaintiff's legs, despite no objective support for any condition producing pain, as well as the possibility of chemical exposure as a causal agent for Plaintiff's problems.

Not noted by the ALJ, but of interest to the undersigned in assessing the credibility of Plaintiff's reports of pain and limitation is the fact that he told Dr. Kilburn that these incidents occurred at his place of work, Buckeye Paper Mill.  (R. 315).  Why are there no records of a workers compensation claim or medical treatment by company doctors or insurance records for this?  For Plaintiff to have suffered these injuries at work and be rendered completely disabled from this, it makes no sense whatsoever that a workers compensation claim was not made or even some type of settlement negotiated.

Finally, even assuming that Plaintiff has leg pain there is no evidence that he could not still work.  He told Dr. Mhatre that he is able to work around his brother's shop doing some mechanical work and when feeling "housebound" he rides around on a golf cart.  He does not need to walk with any type of assistive device, although he claims that the primary reason he cannot work is that he is unable to stand on his legs.  In short, there is substantial evidence to support the ALJ's findings that Plaintiff has some degree of limitation, but none that totally precludes any work.

**No. 1:05CV44-MMP/AK**

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED.**

**At Gainesville, Florida, this _30th_  day of August, 2006.**

**_s/ A. KORNBLUM_**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:05CV44-MMP/AK**